IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH D. GORSHA, *et al.*, | Case No. 2:18-cv-508 |
| Plaintiffs, | |
| v. | Judge Graham |
| BERNARD E. CLARK, *et al.*, | Magistrate Judge Jolson |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court for consideration of cross-motions for summary judgment. Defendant Mid Ohio Title Agency, LLC d/b/a Lanco Title Agency ("Lanco") seeks summary judgment on Plaintiffs' breach of escrow agreement claim, its breach of contract counterclaim against Plaintiffs, and Defendants Bernard E. Clark, Alice R. Clark, and Scott Clark's crossclaim for breach of fiduciary duty. (ECF No. 111.) Plaintiffs Joseph D. Gorsha, Nancy Gorsha, Damon J. Faldowski, Dianne M. Faldowski, Damon J. Faldowski, II, and Mark R. Faldowski (collectively "Plaintiffs") simultaneously move for summary judgment on their breach of escrow agreement claim against Lanco. (ECF No. 109.) For the reasons that follow, Lanco's motion (ECF No. 111) is **GRANTED IN PART** as it pertains to Defendants Bernard E. Clark, Alice R. Clark, and Scott Clark's breach of fiduciary duty crossclaim and Plaintiffs Nancy Gorsha and Dianne M. Faldowski's breach of escrow agreement claim and **DENIED IN PART** as it pertains to Plaintiffs Joseph D. Gorsha, Damon J. Faldowski, Damon J. Faldowski, II, and Mark R. Faldowski's breach of escrow agreement claim and Lanco's breach of contract counterclaim against Plaintiffs. For the reasons set forth below, Plaintiffs' motion (ECF No. 109)**,** as it pertains to their breach of escrow agreement claim, is **DENIED**.

1

# I. BACKGROUND

## A. Factual Background

Plaintiffs all reside outside of Ohio, but Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and Mark Faldowski jointly owned real property in Belmont County, Ohio consisting of 37.525 Acres located at 0 Sandy Ridge Road, Barnesville, Ohio, bearing parcel number 45.00151.000 (the "Property"). (Compl. ¶¶ 1, 8–11, ECF No. 1 at 2, 4.) Plaintiffs Nancy Gorsha and Dianne Faldowski each held a dower interest in the Property. (ECF No. 78-1 at 374; Faldowski Dep. 26–27, ECF No. 98 at 886–87.)

On March 8, 2013, Plaintiffs executed an oil and gas lease for the Property with Rice Drilling D, LLC ("Rice Drilling"). (*Id.* at ¶ 18; ECF No. 1-3 at 21–29.) On May 15, 2013, Plaintiffs Joseph Gorsha and Damon Faldowski and Defendants Bernard and Alice Clark entered into a contract for the sale, of the surface rights only, of the Property (the "Real Estate Purchase Contract"). (*Id.* at ¶ 2; ECF No. 1-2 at 18–20.) The Real Estate Purchase Contract gave the Clarks the option to purchase the Property until June 30, 2013. (*Id.* at 18.)

Plaintiffs' real estate agent, Brian Bauer, recommended Mid Ohio Title Agency, LLC, an Ohio limited liability company, d/b/a Lanco Title Agency ("Lanco") serve as the escrow agent and title company for the sale of the Property. (Bauer Dep. 19, ECF No. 105 at 1196.) Plaintiffs and Lanco did not have a written escrow agreement. (Stipulations ¶ 16, ECF No. 78-1 at 366.) On May 24, 2013, Mr. Bauer sent Lanco a copy of the Real Estate Purchase Contract, which stated, "Seller is [r]eserving mineral [r]ights." (Exs. A and F, ECF No. 78-1 at 369, 377.) Mr. Bauer's May 24, 2013 email attaching the Real Estate Purchase Contract also specified, "The sellers will be reserving the mineral rights to this property as well." (*Id.* at 369.)

On May 30, 2013, Lanco's title report noted the existing oil and gas lease between Plaintiffs and Rice Drilling and contained the corresponding memorandum of oil and gas lease filed with

the Belmont County Recorder's Office on April 17, 2013. (J. Clark Dep. 21:1–18, ECF No. 103 at 1175; Ex. 31, ECF No. 102-1 at 1096.) On June 5, 2013, Mr. Bauer once again urged Lanco to, "contact the sellers to discuss the language . . . to use for the mineral reservation on this." (*Id.* at 370.) All of Plaintiffs' communications for the sale of the Property were made through Damon Faldowski (Stipulations ¶ 20, ECF No. 78-1 at 366.). Mr. Faldowski never discussed the mineral reservation language with Lanco. (Faldowski Dep. 72, 73, ECF No. 98 at 932–33.)

When the real estate transaction did not close by June 30, 2013, the parties to the Real Estate Purchase Contract orally agreed to extend the closing date. (Gorsha Dep. 24–25, ECF No. 97 at 763–64; B. Clark Dep. 13, ECF No. 94 at 490.) On August 17, 2013, Mr. Bauer sent another email to Lanco, reminding the title agency that Plaintiffs were reserving the mineral rights. (Bauer Dep. 20:3-21:4, ECF No. 105 at 1196; Gorsha Dep. Ex. 16, ECF No. 129-1 at 1763.)

On August 26, 2013, Lanco sent a closing package to Plaintiffs. (J. Clark Aff. ¶ 3, Ex. A, ECF No. 111-1 at 1448.) The closing package included a warranty deed conveying the Property to Bernard E. Clark, Alice R. Clark, husband and wife and Scott L. Clark (collectively, "the Clark Family") for their joint lives, the remainder to the survivor of them (the "Deed"), Funds Disbursement Authorization, Settlement Statement (HUD-1), Addendum to HUD-1 Settlement Statement, and Affidavit. (Exs. 1–4, ECF No. 111-1 at 1450–58.) On August 30, 2013, Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and Mark Faldowski (by power of attorney) and the Clark Family signed the Funds Disbursement Authorization and Addendum to HUD-1 Settlement Statement. (*Id.* at 1456–57.) The Funds Disbursement Authorization directed, authorized, and instructed Lanco, as the escrow agent, to deposit funds received. (*Id.* at 1457.) On September 4, 2013, Plaintiffs executed the Deed and Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and Mark Faldowski (by power of attorney) signed the Affidavit.

3

(*Id.* at 1451, 1458.) The Affidavit did not identify any other person with a right of possession of the Property. (*Id.* at 1458; Stipulations ¶ 14, ECF No. 78-1 at 366.)

Mr. Jonathan Clark of Lanco recorded the Deed with the Belmont County Recorder's Office on October 4, 2013. (Compl. at Ex. 4, ECF No. 1-5 at 31.) The Deed failed to provide for the reservation of the mineral rights. (Compl. at ¶ 30.) Rather, the Deed conveyed all right, title and interest in the Property to the Clark Family. (Compl. at Ex. 4, ECF No. 1-5.) On October 11, 2013, Lanco mailed a copy of the Deed to Mr. Bernard Clark. (Ex. 6, ECF No. 111-1 at 1460.)

In 2015, oil and gas landman,[1] Randy Ketcham, approached the Clark Family about leasing the mineral rights to the Property. (Ketcham Aff. ¶ 5, ECF No. 121-1 at 1693.) With Mr. Ketcham's assistance, the Clark Family executed the documentation to lease the mineral rights. (*Id.* at ¶ 10; B. Clark Dep. 34–35, ECF No. 94 at 510–11.) Gulfport Energy later drilled the Property and paid the corresponding mineral production royalties to the Clark Family. (Compl. at ¶¶ 12, 31; ECF No. 109-1 at 1139.) Plaintiffs did not learn that drilling had taken place on the Property until February 4, 2018, when they consulted Mr. Bauer prior to the expiration of the Rice Drilling oil and gas lease on the Property. (Compl. at ¶ 32.) This action soon followed.

**B. Procedural Background**

On May 22, 2018, Plaintiffs commenced this action setting forth seven causes of action: 1) reformation of the deed; 2) breach of contract; 3) disgorgement; 4) unjust enrichment; and 5) conversion; 6) legal negligence; and 7) breach of escrow agreement. (*Id.* at ¶¶ 34–73.) Plaintiffs' seventh cause of action alleges that Lanco breached the parties' implied escrow agreement by

---

[1] As an independent contractor oil and gas landman, Mr. Ketcham contacts landowners concerning oil and gas lease negotiations and works with mineral company attorneys to prepare and complete legal documentation for mineral rights leasing. (Ketcham Aff. ¶ 4, ECF No. 121-1 at 1692.)

4

disbursing funds and recording a deed that did not conform to the terms of the Real Estate Purchase Contract.

On August 21, 2018, Lanco filed its counterclaim against Plaintiffs claiming Plaintiffs materially breached the Affidavit executed on September 4, 2013 pursuant to which Plaintiffs agreed to indemnify and hold harmless Lanco for factual misstatements in the Affidavit when they filed the instant case. (Countercl., ECF No. 28 at 143, 147.) On September 20, 2018, the Clark Family filed its amended crossclaim, claiming that as the escrow agent, Lanco owed a fiduciary duty to both the buyers and the sellers to follow the agreed terms of the Real Estate Purchase Contract, and that Lanco breached its fiduciary duty by failing to ensure that the Deed comported with the terms of the Real Estate Purchase Contract. (Am. Crosscl., ECF No. 43 at ¶¶ 4–5, 9.)

On May 24, 2019, Plaintiffs and Lanco filed cross-motions for summary judgment. (ECF Nos. 109 and 111.) The Clark Family does not move for summary judgment on its crossclaim against Lanco. Similarly, Plaintiffs do not move for summary judgment on Lanco's counterclaim against them.[2] All of the parties' respective responses in opposition and reply briefs have been filed. Plaintiffs' and Lanco's motions are ripe for adjudication.

## II. STANDARD OF REVIEW

Plaintiffs and Lanco have moved for summary judgment under Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt,* 586 F.3d 459,

---

[2] Plaintiffs indicate that though they have not expressly sought summary judgment on Lanco's counterclaim against them, Lanco's counterclaim "is the subject of a pending motion for judgment on the pleadings, on which [P]laintiffs believe they will prevail, but the very same arguments which [P]laintiffs have advanced against Lanco also serve to address Lanco's counterclaim against [P]laintiffs." (ECF No. 126 at 1740.) The Court is unable to locate the referenced motion for judgment on the pleadings on its docket.

5

465 (6th Cir. 2009). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

A district court considering a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum,* 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *see Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Revis,* 489 F.3d at 279–80 (quoting *Anderson,* 477 U.S. at 251–52).

There is no obligation to "grant judgment as a matter of law for one side or the other," simply because the parties have filed simultaneous cross-motions for summary judgment. *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 312 (6th Cir. 2010) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Instead, "a 'court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Id*. (quoting *Taft*, 929 F.2d at 248). Each motion must be evaluated under the standard requiring the Court to "view all facts and inferences in the light most favorable to the non-moving party." *Travelers Prop Cas. Co. of Am. v. Hillerich & Bradsby Co.,*

*Inc.*, 598 F.3d 257, 264 (6th Cir. 2010) (quoting *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 917 (6th Cir. 2004)).

**III. DISCUSSION**

**A. Standing**

As an initial matter, the Court addresses Lanco's argument that Plaintiffs Nancy Gorsha and Dianne Faldowski lack standing to sue Lanco for breach of the escrow agreement. (ECF No. 111 at 1443.) Lanco reasons that because Mrs. Gorsha and Mrs. Faldowski only held a dower interest in the Property, they could not suffer their claimed damages of loss of royalty payments. (*Id.*) As standing to sue is a threshold issue that requires resolution prior to addressing the merits of a claim, the Court begins with this issue. *Whitmore v. Arkansas*, 495 U.S. 149, 154, 110 S. Ct. 1717, 1722 (1990).

"Dower is a means of providing the surviving spouse with a source of support when the other spouse dies, and Ohio is one of the few states which still retains the concept of dower, albeit in an extremely limited form." *Short v. Conn*, No. 93CA709, 1994 Ohio App. LEXIS 312, at *7 (Ct. App. Jan. 25, 1994) (citing *State v. Thrower*, 81 Ohio App.3d 15, 19, 610 N.E.2d 433 (Ct. App. 1991)). In Ohio, the right of dower is "an estate for life [of one spouse] in one third of the real property of which the [other spouse] was seized as an estate of inheritance at any time during the marriage." Ohio Rev. Code § 2103.02. Under Ohio law, "dower is a contingent inchoate right [which] becomes vested in the surviving spouse only upon the death of the other spouse." *Goodman v. Gerstle*, 158 Ohio St. 353, 358, 109 N.E.2d 489, 492 (1952).

Both the Sixth Circuit and this Court have concluded that when property is titled in one spouse's name only, the other spouse's inchoate dower interest does not confer standing to sue. *Myers v. Vill. of Alger*, 102 F. App'x 931, 933 (6th Cir. 2004) (finding the husband lacked standing

7

to sue because the couple's property was titled in the wife's name only); *Egnot v. Triad Hunter LLC*, No. 2:12-cv-1008, 2013 U.S. Dist. LEXIS 141336, at *7–8 (S.D. Ohio Sep. 30, 2013) (determining that a husband did not have standing to pursue suit concerning the couple's property when the property was titled in wife's name only, as he could not recover upon rights not yet lost).

Here, the undisputed facts show that the Property at issue was titled in Plaintiffs Joseph Gorsha and Damon Faldowski's names, and their spouses, Plaintiffs Nancy Gorsha and Dianne Faldowski held only dower interests. Under Ohio law, the dower interests of Mrs. Gorsha and Mrs. Faldowski remain inchoate for the remainder of their spouses' lives. Therefore, the Court concludes, as a matter of law, that Plaintiffs Nancy Gorsha and Dianne Faldowski lack standing to pursue their breach of escrow agreement claim against Lanco, and summary judgment on their claim is warranted.

### B. The Clark Family's Crossclaim: Breach of Fiduciary Duty

Lanco also seeks summary judgment in its favor on the Clark Family's amended crossclaim for Lanco's alleged breach of fiduciary duty. The Clark Family claims that Lanco had a fiduciary duty to follow the terms of the Real Estate Purchase Contract by reserving the mineral rights to Plaintiffs, and that Lanco failed to do so when it recorded a deed that did not conform to the terms of the Real Estate Purchase Contract (Am. Crosscl. ¶¶ 5–9, ECF No. 43 at 244.) The Clark Family claims damages, including money spent to defend this lawsuit and any damages it may be ordered to pay as a result thereof. (*Id.* at ¶ 10.)

A breach of fiduciary duty claim amounts to a negligence claim concerning a higher standard of care. *Hurst v. Enter. Title Agency*, 157 Ohio App. 3d 133, 144-45, 809 N.E.2d 689, 697 (2004). The party asserting a breach of fiduciary duty claim must establish: 1) the existence of a fiduciary duty, 2) a breach of that duty, and 3) an injury resulting therefrom. *Id.* But "a

fundamental principle of the law of *all* torts is that a legal right must exist and that this right must be violated in order to warrant redress." *Strock v. Pressnell*, 38 Ohio St. 3d 207, 217, 527 N.E.2d 1235, 1243 (1988) (emphasis in original).

Here, under the terms of the Real Estate Purchase Contract, the Clark Family had no legal right to the mineral rights. These rights were expressly reserved by Plaintiffs. When the Deed failed to reserve the mineral rights to Plaintiffs, the resulting injury was suffered by Plaintiffs, not the Clark Family, who in fact benefited from the Deed's error.

Lanco argues that the Clark Family's own actions are the proximate cause of the present suit and the Clark Family's resulting need to defend itself. (ECF No. 111 at 1435.) Though the Clark Family places the blame on the "flawed deed" (ECF No. 122 at 1708), Lanco points out that the Clark Family had to take affirmative steps to claim the mineral rights it did not contract for under the Real Estate Purchase Contract. (*Id.*)

The Court agrees. Lanco's recording of the Deed did not prompt automatic royalty payments to the Clark Family. Instead, the undisputed facts demonstrate that the Clark Family executed documentation to lease the mineral rights and receive the resulting royalty payments. (Ketcham Aff. ¶ 10, ECF No. 121-1 at 1693; B. Clark Dep. 34–35, 40, ECF No. 94 at 510–11, 517.) Thus, the Clark Family did not suffer injury resulting from Lanco's alleged breach. Funds expended by the Clark Family to defend this lawsuit are the result of the Clark Family's own conduct in actively leasing the mineral rights and accepting the royalties.

Even viewing the facts in the light most favorable to the Clark Family, there is no light sufficient to salvage their crossclaim. The record is bereft of any evidence demonstrating a genuine dispute of material fact as to the third element of their breach of fiduciary duty claim, injury resulting from Lanco's recording of a deed that did not adhere to the terms of the Real Estate

9

Purchase Contract. As the Clark Family has failed to make a showing sufficient to establish the existence of an element essential to their breach of fiduciary duty crossclaim, Lanco is entitled to judgment as a matter of law.

### C. Plaintifffs' Claim: Breach of the Escrow Agreement

Plaintiffs move for summary judgment against Lanco, claiming that Lanco breached their implied escrow agreement by improperly recording a deed that did not reserve the mineral rights to Plaintiffs and disbursing the escrow funds without ensuring that the Deed comported with the terms of the Real Estate Purchase Contract. (ECF No. 109-1 at 1344.) Lanco also moves for summary judgment on this claim, arguing that: 1) it complied with its obligations under the escrow agreement by recording the Deed and disbursing the escrow funds; 2) the Clark's Family conduct in claiming the mineral rights was not reasonably foreseeable to Lanco at the time it entered into the escrow agreement; and 3) Plaintiffs waived their breach of escrow agreement claim and are estopped from bringing this claim against Lanco. (ECF No. 111 at 1438–42.)

Under Ohio law, a party asserting a breach of contract claim must establish four elements: (1) a binding contract or agreement; (2) the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach. *Carbone v. Nueva Constr. Grp., L.L.C.*, 2017-Ohio-382, ¶ 14, 83 N.E.3d 375, 380 (Ct. App.)

#### 1. The Terms and Obligations of the Escrow Agreement

The parties do not dispute the existence of an implied escrow agreement between Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and Mark Faldowski and Lanco. (Countercl. ¶ 1, ECF No. 28 at 142; ECF No. 119 at 1643.) Rather, Plaintiffs and Lanco dispute the terms and obligations of their escrow agreement and whether Lanco complied with those terms

and obligations. While Lanco admits that many escrow agreements obligate the escrow agent to ensure the terms of the purchase contract are fulfilled, Lanco claims Plaintiffs have not shown that such a reservation-of-rights term was a part of the parties' escrow agreement. (ECF No. 117 at 1607.)

Lanco claims that since the Real Estate Purchase Contract expired on June 30, 2013 and was not modified, pursuant to its terms, by a signed writing, Lanco did not have to comply with its terms and instead relied on the conduct and representations of Plaintiffs and the Clark Family. (ECF No. 111 at 1443.) Lanco states that neither Plaintiffs nor the Clark Family informed Lanco of the terms of the escrow agreement or instructed the title agency to prepare a deed reserving the mineral rights to Plaintiffs. (ECF No. 117 at 1606–07.) According to Lanco, it complied with its obligations under the escrow agreement by recording the Deed and disbursing the escrow funds upon receipt of the Plaintiffs' executed closing documents.

Plaintiffs counter that Plaintiffs and the Clark Family waived the Real Estate Purchase Contract's written modification requirement and modified the closing date through their actions. (ECF No. 126 at 1739.) Ohio case law supports Plaintiffs' contention, because "[a] party may waive a written contract term by affirmative actions to that end." *White Co.* v. *Canton Transportation Co.* (1936), 131 Ohio St. 190; *BancOhio Natl. Bank* v. *Abbey* (1984), 13 Ohio App. 3d 446; *Pekarek v. Broadway Realty P'ship*, No. 58626, 1991 Ohio App. LEXIS 2564, at *9 (Ct. App. May 30, 1991). Plaintiffs insist that the parties to the Real Estate Purchase Contract intended for the other previously agreed upon terms to remain the same. (ECF No. 126 at 1739.)

Significantly, Plaintiffs' real estate agent, Brian Bauer, emailed Lanco on August 17, 2013, well after June 30, 2013 and nine days before Lanco mailed the closing documents, reminding Lanco that Plaintiffs were reserving the mineral rights. (Bauer Dep. 20:3-21:4, ECF No. 105 at

1196; Gorsha Dep. Ex. 16, ECF No. 129-1 at 1763.) Other record evidence also reinforces Plaintiffs' assertion. After the contract's oral extension, Bernard and Alice Clark paid the previously agreed upon purchase price of $75,050.00 for the surface rights only (Compl. ¶ 26, ECF No. 1 at 6; ECF No. 112 at 1501), and the property conveyed to them was the same parcel number identified in the Real Estate Purchase Contract (ECF No. 78-1 at 373).

### 2. The Clark Family's Leasing of the Mineral Rights

Lanco declares that while "a contracting party is generally expected to take account of those risks that are foreseeable at the time [of] contract," it cannot be held liable for Plaintiffs' loss of mineral rights, as it did not reasonably foresee that such a loss would occur at the time it entered into the escrow agreement with Plaintiffs. (ECF No. 117 at 1608) (quoting *Trucco Constr. Co., Inc. v. Columbus,* 2006-Ohio-6984, ¶ 43 (Ct. App.)). Specifically, Lanco argues that it, "had no way of knowing that the Clark Family would conspire with Randy Ketchum [sic] to take mineral rights that the Clark Family apparently knew belonged to Plaintiffs." (*Id.* at 1609.)

As previously outlined by this Court, "The main function of an escrow agent is to hold documents and funds until the conditions of the purchase agreement are met whereupon the escrow agent releases the documents and funds." (Op. & Order, ECF No. 82 at 398) (quoting *Saad v. Rodriguez*, 30 Ohio App. 3d 156, 158, 506 N.E.2d 1230, 1233 (1986)). Lanco acknowledges this function by admitting that many escrow agreements obligate the escrow agent to ensure the terms of the purchase contract are fulfilled. Therefore, upon entering into an escrow agreement with Plaintiffs, Lanco had an obligation to record a deed that complied with the terms of the purchase agreement.

The Real Estate Purchase Contract contained a reservation-of-mineral-rights term. It is undisputed that by failing to reserve the mineral rights to Plaintiffs, Lanco recorded a deed that did

not meet the conditions of the Real Estate Purchase Contract. A reasonable factfinder could find that a foreseeable risk of Lanco's failure to reserve the rights to Plaintiffs was that the buyers would later attempt to claim or benefit from these rights. In other words, it follows that by recording a deed conveying all right, title and interest in the Property to the Clark Family, it was reasonably foreseeable that the Clark Family would later claim the mineral rights to the Property. Therefore, Lanco's attempt to dodge liability under its "the Clark Family's tortious conduct was not reasonably foreseeable" theory bears no fruit and does not warrant granting summary judgment to Lanco.

### 3. Waiver and Estoppel

Lanco asserts the defensive theories of equitable estoppel and waiver by estoppel. "Equitable estoppel prevents relief when one party induces another to believe facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *Doe v. Archdiocese of Cincinnati*, 116 Ohio St. 3d 538, 539, 880 N.E.2d 892, 894–95 (2008) (internal quotation marks and citations omitted). Waiver by estoppel "'exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it.'" *Nat'l City Bank v. Rini,* 162 Ohio App. 3d 662, 668, 834 N.E.2d 836, 840 (2005) (quoting *Mark-It Place Foods, Inc. v. New Plan Excel Realty Tr., Inc.*, 156 Ohio App. 3d 65, 92–93, 804 N.E.2d 979, 1000 (2004)).

With respect to both defenses, Lanco argues that Plaintiffs' execution of the Deed without raising any objections led Lanco to believe that Plaintiffs were accepting the Deed just as Lanco had prepared it. Lanco claims that Plaintiffs had an obligation to review the Deed for inaccuracies and that their execution of the closing documents without "asking any questions or raising any

concerns to Lanco would indicate to a reasonably prudent escrow agent that Plaintiffs approved the closing documents and wished the escrow agent to record the deed and disburse the escrow funds." (ECF No. 117 at 1612.) In sum, Lanco maintains that Plaintiff's acceptance of the Deed induced or misled Lanco to proceed with the closing and that Plaintiffs cannot, years later, make the inconsistent claim that Lanco acted improperly in preparing the Deed.

The Court finds that Lanco is not entitled to summary judgment on its estoppel defenses. There are genuine disputes of material fact concerning whether Plaintiffs induced or misled Lanco and whether Lanco reasonably relied on Plaintiffs' conduct to its detriment or prejudice. Plaintiffs have produced evidence from which a reasonable factfinder could conclude that they, rather than inducing or misleading Lanco, clearly communicated their intentions to reserve the mineral rights when their real estate agent not only provided the Real Estate Purchase Contract to Lanco but also emailed Lanco on three separate occasions to reiterate that Plaintiffs wished to reserve their mineral rights. Further, a factfinder could find that Plaintiffs executed the Deed without rigorous review or raising concerns because they were reasonably relying on the attorney who prepared it to have done so correctly. Finally, a factfinder could determine that Lanco, whose owner Jonathan Clark is also the attorney who prepared the Deed, did not rely to its detriment, or at least not reasonably, on Plaintiffs' execution of the Deed as representing their tacit approval of the Deed's failure to reserve the mineral rights.

Accordingly, the Court denies the parties' cross-motions for summary judgment on the breach of escrow agreement claim.

**D. Lanco's Counterclaim: Breach of Contract**

Lanco moves for summary judgment on its breach of contract counterclaim against Plaintiffs, claiming that Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and

14

Mark Faldowski breached their agreement to indemnify and hold Lanco harmless for any damages resulting from Plaintiffs' inaccurate statements on the Affidavit signed September 4, 2013 by bringing suit against Lanco for recording a deed that did not retain the mineral rights to Plaintiffs. (ECF No. 111 at 1444.) In essence, Lanco once again shifts the blame for the Deed's error to Plaintiffs by insisting it was Plaintiffs' failure to disclose the existing Rice Drilling oil and gas lease that resulted in the erroneous deed, and Lanco should be held harmless for Plaintiffs' factual misstatement. This argument is not well taken.

As Plaintiffs point out, Lanco's May 30, 2013 title report noted the existing oil and gas lease between Plaintiffs and Rice Drilling and contained the corresponding memorandum of oil and gas lease filed with the Belmont County Recorder's Office on April 17, 2013. (ECF No. 119 at 1653.) Not only was Lanco aware of the Rice Drilling oil and gas lease months before sending the closing documents on August 26, 2013, but whether Plaintiffs had an existing oil and gas lease on the Property is immaterial. The record evidence overwhelmingly demonstrates that Plaintiffs and the Clark Family intended for Plaintiffs to retain the mineral rights to the Property, regardless of whether Plaintiffs entered into an oil and gas lease before or after the conveyance of the surface rights to the Clark Family. Moreover, Plaintiffs' real estate agent emailed Lanco three times to emphasize that it was Plaintiffs' intent to reserve the mineral rights.

Construing the evidence in the light most favorable to Plaintiffs, the Court finds that genuine disputes of material fact remain concerning whether Plaintiffs breached the indemnification agreement contained in the Affidavit, and Lanco is denied summary judgment on its breach of contract counterclaim.

IV. **CONCLUSION**

For the foregoing reasons, the Motion of Defendant Mid Ohio Title Agency, LLC d/b/a Lanco Title Agency for Summary Judgment is (ECF No. 111) is **GRANTED IN PART** as it

pertains to Defendants Bernard E. Clark, Alice R. Clark, and Scott Clark's breach of fiduciary duty crossclaim and Plaintiffs Nancy Gorsha and Dianne M. Faldowski's breach of escrow agreement claim and **DENIED IN PART** as it pertains to Plaintiffs Joseph D. Gorsha, Damon J. Faldowski, Damon J. Faldowski, II, and Mark R. Faldowski's breach of escrow agreement claim and Lanco's breach of contract counterclaim against Plaintiffs.  Consequently, Plaintiffs Nancy Gorsha and Dianne M. Faldowski's breach of escrow agreement claim against Lanco is **DISMISSED WITH PREJUDICE**, and the Clark Family's amended crossclaim against Lanco for breach of fiduciary duty is **DISMISSED WITH PREJUDICE**.  Furthermore, the Motion of Defendant Mid Ohio Title Agency, LLC d/b/a Lanco Title Agency to Dismiss First Amended Crossclaim of Bernard E. Clark, Alice R. Clark, and Scott Clark (ECF No. 52) is hereby **DENIED** as moot.

Plaintiffs' Motion for Summary Judgment (ECF No. 109), as it pertains to their breach of escrow agreement claim against Lanco is also **DENIED**.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: October 4, 2019