IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH D. GORSHA, *et al.*, | |
| Plaintiffs, | Case No. 2:18-cv-508 |
| v. | Judge Graham |
| BERNARD E. CLARK, *et al.*, | Magistrate Judge Jolson |
| Defendants. | |

## OPINION AND ORDER

This matter is once again before the Court for consideration of cross-motions for summary judgment by Plaintiffs Joseph D. Gorsha, Nancy Gorsha, Damon J. Faldowski, Dianne M. Faldowski, Damon J. Faldowski, II, and Mark R. Faldowski (collectively "Plaintiffs") and Defendants Bernard Clark, Alice Clark, and Scott Clark (collectively, "the Clark Family"). (ECF Nos. 109 and 112.) For the reasons that follow, Plaintiffs' motion (ECF No. 109) is **GRANTED** in part as to liability, and the Clark Family's motion (ECF No. 112) is **DENIED** in its entirety.

### I. BACKGROUND
### A. Factual Background

Plaintiffs all reside outside of Ohio, but Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and Mark Faldowski jointly owned real property in Belmont County, Ohio consisting of 37.525 Acres located at 0 Sandy Ridge Road, Barnesville, Ohio, bearing parcel number 45.00151.000 (the "Property"). (Compl. ¶¶ 1, 8–11, ECF No. 1 at 2, 4.) Plaintiffs Nancy Gorsha and Dianne Faldowski each held a dower interest in the Property. (ECF No. 78-1 at 374; Faldowski Dep. 26–27, ECF No. 98 at 886–87.)

On March 8, 2013, Plaintiffs executed an oil and gas lease for the Property with Rice Drilling D, LLC ("Rice Drilling"). (*Id.* at ¶ 18; ECF No. 1-3 at 21–29.) On May 15, 2013, Plaintiffs

1

Joseph Gorsha and Damon Faldowski and Defendants Bernard and Alice Clark entered into a contract for the sale, of the surface rights only, of the Property (the "Real Estate Purchase Contract"). (*Id.* at ¶ 2; ECF No. 1-2 at 18–20.) The Real Estate Purchase Contract gave the Clarks the option to purchase the Property until June 30, 2013. (*Id.* at 18.)

Plaintiffs' real estate agent, Brian Bauer, recommended Mid Ohio Title Agency, LLC, an Ohio limited liability company, d/b/a Lanco Title Agency ("Lanco") serve as the escrow agent and title company for the sale of the Property. (Bauer Dep. 19, ECF No. 105 at 1196.) Plaintiffs and Lanco did not have a written escrow agreement. (Stipulations ¶ 16, ECF No. 78-1 at 366.) On May 24, 2013, Mr. Bauer sent Lanco a copy of the Real Estate Purchase Contract, which stated, "Seller is [r]eserving mineral [r]ights." (Exs. A and F, ECF No. 78-1 at 369, 377.) Mr. Bauer's May 24, 2013 email attaching the Real Estate Purchase Contract also specified, "The sellers will be reserving the mineral rights to this property as well." (*Id.* at 369.)

On May 30, 2013, Lanco's title report noted the existing oil and gas lease between Plaintiffs and Rice Drilling and contained the corresponding memorandum of oil and gas lease filed with the Belmont County Recorder's Office on April 17, 2013. (J. Clark Dep. 21:1–18, ECF No. 103 at 1175; Ex. 31, ECF No. 102-1 at 1096.) On June 5, 2013, Mr. Bauer once again urged Lanco to, "contact the sellers to discuss the language . . . to use for the mineral reservation on this." (*Id.* at 370.) All of Plaintiffs' communications for the sale of the Property were made through Damon Faldowski (Stipulations ¶ 20, ECF No. 78-1 at 366.). Mr. Faldowski never discussed the mineral reservation language with Lanco. (Faldowski Dep. 72, 73, ECF No. 98 at 932–33.)

When the real estate transaction did not close by June 30, 2013, the parties to the Real Estate Purchase Contract orally agreed to extend the closing date. (Gorsha Dep. 24–25, ECF No. 97 at 763–64; B. Clark Dep. 13, ECF No. 94 at 490.) On August 17, 2013, Mr. Bauer sent another

email to Lanco, reminding the title agency that Plaintiffs were reserving the mineral rights. (Bauer Dep. 20:3-21:4, ECF No. 105 at 1196; Gorsha Dep. Ex. 16, ECF No. 129-1 at 1763.)

On August 26, 2013, Lanco sent a closing package to Plaintiffs. (J. Clark Aff. ¶ 3, Ex. A, ECF No. 111-1 at 1448.) The closing package included a warranty deed conveying the Property to the Clark Family (the "Deed"), Funds Disbursement Authorization, Settlement Statement (HUD-1), Addendum to HUD-1 Settlement Statement, and Affidavit. (Exs. 1–4, ECF No. 111-1 at 1450–58.) On August 30, 2013, Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and Mark Faldowski (by power of attorney) and the Clark Family signed the Funds Disbursement Authorization and Addendum to HUD-1 Settlement Statement. (*Id.* at 1456–57.) The Funds Disbursement Authorization directed, authorized, and instructed Lanco, as the escrow agent, to deposit funds received. (*Id.* at 1457.) On September 4, 2013, Plaintiffs executed the Deed and Plaintiffs Joseph Gorsha, Damon Faldowski, Damon Faldowski, II, and Mark Faldowski (by power of attorney) signed the Affidavit. (*Id.* at 1451, 1458.) The Affidavit did not identify any other person with a right of possession of the Property. (*Id.* at 1458; Stipulations ¶ 14, ECF No. 78-1 at 366.)

Mr. Jonathan Clark, of Lanco, recorded the Deed with the Belmont County Recorder's Office on October 4, 2013. (Compl. at Ex. 4, ECF No. 1-5 at 31.) The Deed failed to provide for the reservation of the mineral rights. (Compl. at ¶ 30.) Rather, the Deed conveyed all right, title and interest in the Property to the Clark Family. (Compl. at Ex. 4, ECF No. 1-5.) On October 11, 2013, Lanco mailed a copy of the Deed to Mr. Bernard Clark. (Ex. 6, ECF No. 111-1 at 1460.)

In 2015, oil and gas landman,[1] Randy Ketcham, approached the Clark Family about leasing the mineral rights to the Property. (Ketcham Aff. ¶ 5, ECF No. 121-1 at 1693.) With Mr. Ketcham's assistance, the Clark Family executed the documentation to lease the mineral rights. (*Id.* at ¶ 10; B. Clark Dep. 34–35, ECF No. 94 at 510–11.) Gulfport Energy later drilled the Property and paid the corresponding mineral production royalties to the Clark Family. (Compl. at ¶¶ 12, 31; ECF No. 109-1 at 1139.) Plaintiffs did not learn that drilling had taken place on the Property until February 4, 2018, when they consulted Mr. Bauer prior to the expiration of the Rice Drilling oil and gas lease on the Property. (Compl. at ¶ 32.) This action soon followed.

### B. Procedural Background

On May 22, 2018, Plaintiffs commenced this action setting forth seven causes of action: 1) reformation of the deed; 2) breach of contract; 3) disgorgement; 4) unjust enrichment; and 5) conversion; 6) legal negligence; and 7) breach of escrow agreement. (*Id.* at ¶¶ 34–73.) Plaintiffs' first five causes of action are against the Clark Family and concern the erroneous deed and the Clark Family's alleged improper receipt of royalty payments.

On May 24, 2019, Plaintiffs and the Clark Family filed cross-motions for summary judgment. (ECF Nos. 109 and 112.) Each side's responses in opposition and reply briefs have been filed. The motions are ripe for adjudication.

## II. STANDARD OF REVIEW

Plaintiffs and the Clark Family have moved for summary judgment under Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled

---

[1] As an independent contractor oil and gas landman, Mr. Ketcham contacts landowners concerning oil and gas lease negotiations and works with mineral company attorneys to prepare and complete legal documentation for mineral rights leasing. (Ketcham Aff. ¶ 4, ECF No. 121-1 at 1692.)

to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt,* 586 F.3d 459, 465 (6th Cir. 2009). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

A district court considering a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum,* 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *see Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Revis,* 489 F.3d at 279–80 (quoting *Anderson,* 477 U.S. at 251–52).

There is no obligation to "grant judgment as a matter of law for one side or the other," simply because the parties have filed simultaneous cross-motions for summary judgment. *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 312 (6th Cir. 2010) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Instead, "a 'court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Id*. (quoting *Taft*, 929 F.2d at 248). Each motion must be evaluated under the standard requiring the Court to "view all facts and inferences in the light most favorable to the non-moving party." *Travelers Prop Cas. Co. of Am. v. Hillerich & Bradsby Co.,*

*Inc.*, 598 F.3d 257, 264 (6th Cir. 2010) (quoting *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 917 (6th Cir. 2004)).

### III. DISCUSSION

#### A. Reformation of the Deed

Plaintiffs and the Clark Family simultaneously move for summary judgment on Plaintiffs' equitable claim for relief. Plaintiffs argue they are entitled to reformation of the Deed to comply with the terms of the Real Estate Purchase Contract. (ECF No. 109-1 at 1340.) The Clark Family counters that the merger doctrine bars the equitable relief Plaintiffs seek. (ECF No. 112 at 1507.)

"The purpose of reformation is to cause an instrument to express the intent of the parties as to the contents thereof, *i.e.,* to establish the actual agreement of the parties." *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St. 2d 282, 286, 209 N.E.2d 194, 197 (1965). A deed may be reformed where words have been excluded from the deed that resulted in the transfer of an estate greater than the parties intended. *Huber v. Knock*, 2008-Ohio-5900, ¶ 6 (Ct. App.). Generally, in Ohio, "when a deed is delivered and accepted without qualification, the underlying purchase contract becomes merged into the deed and a cause of action no longer exists upon the contract." *Robenolt v. Zyznar*, 2014-Ohio-2593, ¶ 10 (Ct. App.) (citing *Fuller v. Drenberg*, 3 Ohio St. 2d 109, 109, 209 N.E.2d 417, 418 (1965)). But Ohio courts also recognize that mistake constitutes an exception to the merger doctrine. *Id.* (citing *Mayer v. Sumergrade*, 111 Ohio App. 237, 239, 167 N.E.2d 516, 518 (1960)).

Where the parties' true intentions have not been expressed due to a mutual mistake, a court may reform an instrument. *Nat'l City Real Estate Servs. LLC v. Frazier*, 2018-Ohio-982, ¶ 27, 96 N.E.3d 311, 319 (Ct. App.). The party seeking to reform the instrument must demonstrate the mutual mistake by clear and convincing evidence. *Robenolt v. Zyznar*, 2014-Ohio-2593, ¶ 11 (Ct.

App.). Clear and convincing evidence is the degree of proof necessary to "produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re Estate of Haynes,* 25 Ohio St. 3d 101, 104, 495 N.E.2d 23, 26 (1986).

Here, there is competent, credible evidence of the parties' true intent. The Real Estate Purchase Contract convincingly establishes that the parties intended for the Plaintiffs to retain the mineral rights to the Property, as it clearly states, "Seller is [r]eserving mineral [r]ights." (Ex. F, ECF No. 78-1 at 377.) Additional record evidence also supports mutual mistake. Mr. Bernard Clark testified that Plaintiffs' real estate agent told him that the sale of the Property did not include the mineral rights. (B. Clark Dep. 16, ECF No. 94 at 493.) Mr. Clark further testified that he did not bargain with Plaintiffs for the sale of the mineral rights. (ECF No. 94 at 511–12.) Plaintiff Damon Faldowski also testified that the reservation of the mineral rights was an important term in the conveyance of the Property to the Clark Family. (Faldowski Dep. 48, ECF No. 98 at 908.) Plaintiff Joseph Gorsha additionally testified that his understanding was that the sale of the Property only included the surface rights, and that Plaintiffs intended to reserve the mineral rights. (Gorsha Dep. 19, ECF No. 97 at 758.)

The record evidence clearly demonstrates that all of the parties to the Real Estate Purchase Contract were fully aware that, upon the transfer of the Property to the Clark Family, Plaintiffs were to retain the mineral rights. Plaintiffs were mistaken about the terms of conveyance when they executed the Deed. Likewise, the Clark Family mistakenly accepted the Property without the mineral reservation and was mistaken about the terms of conveyance in the recorded Deed. The omission of the mineral rights reservation from the Deed was, therefore, a mutual mistake.

The Clark Family argues that though the parties' intent may warrant reformation that Plaintiffs somehow committed inexcusable neglect by failing to catch the Deed's error and are

7

therefore not entitled to relief. The Court finds this argument to be without merit, as Plaintiffs' conduct does not demonstrate gross inexcusable neglect. As the Clark Family points out, Plaintiffs' conduct must have gone beyond mere mistake, and reformation is still permissible even if a party is not "wholly free from fault," as long as that party's negligence did not violate a positive legal duty. (ECF No. 112 at 1508) (citing *Hartman v. Tillett*, 86 Ohio App. 20, 23, 89 N.E.2d 613, 615 (1948) ("It is clear that the only negligence of the plaintiff was in assuming that the attorney had prepared the deed correctly and in signing it without reading it.") The *Hartman* court found that the plaintiff's negligence was a "mere advertence" that did not preclude equitable relief, and this Court finds the same. *Hartman*, 89 N.E.2d at 615. Here, Plaintiffs had no legal duty to ensure the terms of the Deed were correct. That duty belonged to the attorney drafting the Deed. *Disciplinary Counsel v. Jones,* 138 Ohio St. 3d 330, 331–32, 6 N.E.3d 1159, 1160–61 (2014) ("The preparation of deeds for another constitutes the practice of law.") Furthermore, their reliance on that attorney to have done so correctly will not bar summary judgment.

The Clark Family also argues that since Mr. Scott Clark was not a party to the Real Estate Purchase Contract, reformation does not apply to him or his interest in the mineral rights. (*Id.* at 1511.) It is immaterial whether Mr. Scott Clark was a party to the Real Estate Purchase Contract. The Deed will be reformed to reflect the true intent of the parties to the Real Estate Purchase Contract, that one hundred percent of the mineral rights are reserved to Plaintiffs. This occurs whether Scott Clark's name is on the Deed or not, as the Deed will reflect that Plaintiffs own in full the mineral rights to the Property.

In sum, the Court finds that Plaintiffs are entitled to reformation of the Deed as a matter of law. Summary judgment on this claim is therefore granted to Plaintiffs and denied to the Clark Family.

## B. Disgorgement, Unjust Enrichment, and Conversion

Plaintiffs assert disgorgement, unjust enrichment, and conversion claims based on the Clark Family's improper receipt of mineral rights conveyed via the erroneous Deed, resulting in improper royalty payments to the Clark Family. Each of these three claims rests on the theory that a party has improperly obtained or retained the rights of another. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E.2d 1298 (1984) (discussing retention of a benefit where it would be unjust to do so); *Miller v. Cloud,* 2016-Ohio-5390, 76 N.E.3d 297 (Ct. App.) (affirming trial court's order of disgorgement of royalties improperly obtained); *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 24 Ohio App. 3d 91, 93, 493 N.E.2d 289, 292 (1985) ("A conversion is recognized as any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights.")

The Court finds, as a matter of law, that Plaintiffs are entitled to summary judgment on this theory no matter the labeling of the claim. The record evidence establishes beyond material dispute that in executing the Deed, the Plaintiffs erroneously conveyed their mineral rights to the Clark Family and having gained those rights improperly, the Clark Family exercised those rights to obtain royalty payments. The Court therefore grants summary judgment in favor of Plaintiffs as to liability with damages to be determined at trial. Consequently, the Clark Family is denied summary judgment on these claims.

## C. Breach of Contract

Similarly, under the Real Estate Purchase Contract, Plaintiffs and the Clark Family agreed that Plaintiffs would retain the mineral rights to the Property. The Clark Family argues that the Real Estate Purchase Contract obligated them to pay the agreed upon purchase price, and that

"Plaintiffs had the contractual obligation to reserve their mineral rights." (ECF No. 112 at 1505.) The Clark Family overlooks the fact that the purchase price paid was for the conveyance of the surface rights only, and that the Clark Family not only improperly received the mineral rights that Plaintiffs were entitled to under the Real Estate Purchase Contract, but they breached the terms of the purchase agreement by exercising rights they had agreed belonged to Plaintiffs and by receiving royalty payments they were never legally entitled to.

Under Ohio law, a party asserting a breach of contract claim must establish four elements: (1) a binding contract or agreement; (2) the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach. *Carbone v. Nueva Constr. Grp., L.L.C.*, 2017-Ohio-382, ¶ 14, 83 N.E.3d 375, 380 (Ct. App.). The undisputed evidence demonstrates that the parties had a binding agreement to reserve Plaintiffs' mineral rights, Plaintiffs fulfilled their obligations under the agreement, and the Clark Family breached that agreement by exercising mineral rights that contractually belonged to Plaintiffs to obtain royalty payments they were not entitled to under the parties' agreement.

The Court therefore grants summary judgment in favor of Plaintiffs as to liability on their breach of contract claim with damages to be determined at trial. Accordingly, the Clark Family is denied summary judgment on this claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 109) is **GRANTED in part** as to liability, but the issue of damages remains for trial. Defendants Bernard Clark, Alice Clark and Scott Clark's Motion for Summary Judgment Against Plaintiffs (ECF No. 112) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: October 4, 2019