**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JOSEPH G. GORSHA,** *et al.,* | |
| Plaintiffs, | **Case No. 2:18-cv-508** |
| **v.** | **Judge James L. Graham** |
| **BERNARD E. CLARK,** *et al.,* | **Magistrate Judge Kimberly A. Jolson** |
| Defendants. | |

<u>**OPINION AND ORDER**</u>

This matter is before the Court for consideration of multiple motions. It is first before the Court for further consideration of its October 4, 2019 Opinion and Order concerning the cross-motions for summary judgment filed by Plaintiffs Joseph G. Gorsha, Nancy Gorsha, Damon J. Faldowski, Dianne M. Faldowski, Damon J. Faldowski, II, and Mark R. Faldowski (collectively "Plaintiffs") and Defendants Bernard E. Clark, Alice R. Clark, and Scott L. Clark (collectively, "the Clark Family") (ECF Nos. 109 and 112). (ECF No. 134.) The principal issue raised about that Opinion and Order is the propriety of granting summary judgment to Plaintiffs on their conversion claim. For the reasons that follow, Plaintiffs' motion (ECF No. 109) remains **GRANTED IN PART AND DENIED IN PART**, but for different reasons, and the Clark Family's motion (ECF No. 112) is now **GRANTED IN PART AND DENIED IN PART**, as further specified below.

This matter is also before the Court on Plaintiffs' Motion for Pre-Judgment Interest and Plaintiffs' Motion for Summary Judgment as to Compensatory and Punitive Damages Against the Clark Family Together with Attorney Fees. (ECF Nos. 165 and 166.) For the reasons that follow,

1

Plaintiffs' Motion for Pre-Judgment Interest (ECF No. 165) is **DENIED**, and Plaintiffs' Motion for Summary Judgment (ECF No. 166) is **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

This case involves the mineral rights on 37.525 acres in Belmont County, Ohio (the "Property"). (ECF No. 1 at 2.)  Plaintiffs owned both the surface and subsurface rights of the Property. (*Id.*)  On March 8, 2013, Plaintiffs entered into an oil and gas lease with Rice Drilling D, LLC ("Rice Drilling"). (ECF No. 1-3 at 21–29.)  Thereafter, Rice Drilling sold the lease to Gulfport Energy Corporation ("Gulfport"). (ECF No. 1 at 7.)

On May 15, 2013 Plaintiffs entered into a contract to sell the surface rights only to Defendants Bernard and Alice Clark (the "Real Estate Purchase Contract"). (ECF No. 1-2 at 18–20.)[1]  Attorney Jonathan Clark, owner of Lanco Title Agency, was retained to prepare the deed. He mistakenly prepared a deed which failed to reserve the subsurface rights to Plaintiffs. (ECF No. 1-5 at 31.)  That deed was recorded on October 4, 2013.[2] (*Id.*)

In 2015, Gulfport representative Randy Ketcham contacted the Clark Family to obtain their assistance in clearing the title to the subsurface rights in preparation for drilling. (ECF No. 121-1 at 1693.)  Ketcham told the Clark Family that the deed they received when they purchased the Property in 2013 made them the owners of the subsurface rights. (*Id.*)  The Clark Family failed to inform Plaintiffs that Gulfport considered the Clark Family the owners of the mineral rights contrary to the terms of the Real Estate Purchase Contract.  (ECF No. 94 at 513.)  Instead, the Clark Family assisted Ketcham by signing documents necessary to cancel several old, long-expired oil and gas leases. (ECF No. 121-1 at 1695–98.)

---

[1] Scott Clark was not a party to the Real Estate Purchase Contract. (*Id.* at 20.)
[2] Title to the Property was ultimately issued in the name of Bernard and Alice Clark, along with their son, Scott Clark.

In the third quarter of 2016, Gulfport drilled the Property and discovered producible quantities of oil and/or gas. (ECF No. 1 at 7.) In the spring of 2017, Gulfport and Rice Energy, on behalf of Rice Drilling, each began paying royalties to the Clark Family, which they accepted and used for their own purposes.[3] (ECF No. 108-1 at 1245–46, 1265–67.)

On May 22, 2018, Plaintiffs commenced this action.

On October 4, 2019, the Court granted Plaintiffs' motion (ECF No. 109) in part as to liability only and denied the Clark Family's motion (ECF No. 112) in its entirety. (ECF No. 134.)

When previously considering the parties' arguments concerning Plaintiffs' disgorgement, unjust enrichment, and conversion claims based on the Clark Family's improper receipt of mineral rights and resulting royalty payments, the Court determined "as a matter of law, that Plaintiffs are entitled to summary judgment on this theory no matter the labeling of the claim." (ECF No. 134 at 1851.)

On October 16, 2020, Plaintiffs filed their Motion for Pre-Judgment Interest, along with their Motion for Summary Judgment as to Compensatory and Punitive Damages Against the Clark Family Together with Attorney Fees. (ECF Nos. 165 and 166.)

The Clark Family responded to Plaintiffs' Motion for Summary Judgment on November 6, 2020. (ECF No. 167.) In their response, the Clark Family asked the Court to reconsider its October 4, 2019 Opinion and Order insofar as it granted Plaintiffs summary judgment on their conversion claim. On December 2, 2020, Plaintiffs submitted their opposition to that request in their reply brief. (ECF No. 172.) The Court will therefore treat the Clark Family's request as a motion to reconsider its October 4, 2019 Opinion and Order.

---

[3] Initially, Scott Clark was not listed on the checks from Rice Energy. His name was added to the checks on August 1, 2017. (ECF No. 108-1 at 1251.) On December 4, 2017, related-entity EQT began issuing checks to the Clark Family on behalf of Rice Drilling. (*Id.* at 1254.)

3

## II.    STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Where, as is here, a grant of partial summary judgment is not a final judgment, a court is well within its discretion to revise its earlier decision.  *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976). ("[A] grant of partial summary judgment limited to the issue of [] liability [is] by [its] terms interlocutory . . . and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291.")

Under Rule 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt,* 586 F.3d 459, 465 (6th Cir. 2009).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

A district court considering a motion for summary judgment "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Revis v. Meldrum,* 489 F.3d 273, 279 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *see Dominguez v. Corr.*

*Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Revis,* 489 F.3d at 279–80 (quoting *Anderson,* 477 U.S. at 251–52).

## III.   DISCUSSION

### A.  Conversion Claim

Plaintiffs' conversion claim asserts that the Clark Family improperly disposed of Plaintiffs' mineral property rights, converted Plaintiffs' royalty payments as their own, and retained those royalties to Plaintiffs' detriment. (Compl. ¶¶ 54–59, ECF No. 1 at 11.)

A conversion claim "is recognized as any exercise of dominion or control wrongfully exerted over the personal property of another in denial of or under a claim inconsistent with his rights." *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 24 Ohio App. 3d 91, 93, 493 N.E.2d 289, 292 (1985) (collecting cases).

The elements of a conversion claim are: "(1) the plaintiff had ownership or right of possession of the property at the time of conversion; (2) the defendant's conversion of plaintiff's property by a wrongful act or disposition; and (3) resulting damages." *Raze Int'l, Inc. v. Southeastern Equip. Co.*, 2016-Ohio-5700, ¶ 49, 69 N.E.3d 1274 (Ct. App.).

When moving for summary judgment on Plaintiffs' conversion claim, the Clark Family argued that: 1) Plaintiffs' claim for conversion of their mineral rights fails as a matter of law, because conversion may only be asserted with respect to personal property and 2) because conversion of money only occurs when it is capable of identification, and the royalty money the Clark Family received was commingled with other assets, Plaintiffs' conversion claim thus fails.

The Court begins with the Clark Family's second argument. In their motion for reconsideration, the Clark Family states, "Nothing in this case suggests that the royalties were otherwise earmarked so as to retain their specific identity." (ECF No. 167 at 2182.) But the multitude of checks attached to the affidavits of the oil and gas company representatives show that the checks were clearly made out to the Clark Family for specified amounts, so as to retain their specific identity. (Ex. 1, ECF No. 109-2 at 1353–1407; Ex. 2, ECF No. 109-3 at 1408–21.) Though Scott Clark testified that the royalty checks were all placed in one shared bank account for farm expenses (ECF No. 96 at 672–73), this is insufficient to overcome the undisputed fact that the royalty amounts remain capable of identification. Furthermore, the oil and gas company records reflect what amounts were paid to the Clark Family and when. Thus, this branch of the Clark Family's motion for summary judgment fails.

The Clark Family also submits that Ohio does not permit a conversion claim with respect to real property, and that the property allegedly converted here was real property. The Clark Family is correct on its first premise: Ohio law does not permit a claim of conversion for the taking of real property. *See Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St. 3d 490, 494, 45 N.E.3d 185, 189 (2015) ("Ohio has long recognized that minerals underlying the surface, including oil and gas, are part of the realty."); *Schlabach v. Kondik*, 2017-Ohio-8016, ¶ 23, 98 N.E.3d 1048, 1055 (Ct. App.) ("Unsevered minerals are real property; however, minerals become personal property when severed from the land.")

But here, the Clark Family did not take or exercise dominion and control over the Property's unsevered mineral rights. Instead, they exercised dominion and control over the royalty payments, which belonged to Plaintiffs under the Gulfport lease. After learning of the deed's failure to reserve the mineral rights to Plaintiffs, the Clark Family falsely represented themselves

as the persons entitled to the royalties under Plaintiffs' lease. Thus, they exercised dominion and control over Plaintiffs' contractual right to receive royalties once the minerals were severed from the Property and became personal property. *Miller v. Cloud*, 2016-Ohio-5390, ¶ 57, 76 N.E.3d 297, 310 (Ct. App.) (reiterating Ohio's long-standing rule that "minerals become personal property when severed from the land"); *see also Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 243, 85 N.E.2d 379 (1949) ("Although land and minerals in place upon or beneath the land are real property even though separately owned, the minerals become personal property immediately upon severance.").

The Court therefore finds as a matter of law that Plaintiffs are entitled to summary judgment as to liability on their conversion claim against the Clark Family.

### B. Breach of Contract and Unjust Enrichment Claims

The Clark Family also raises the issues of Scott Clark's liability for Plaintiffs' breach of contract claim and the Clark Family's liability under both breach of contract and unjust enrichment theories of liability.[4]

As it is undisputed that Scott Clark was not a party to the Real Estate Purchase Contract, the Court dismisses Plaintiffs' breach of contract claim against him as a matter of law.[5]

Furthermore, due to the existence of an express contract governing the real estate purchase agreement, Plaintiffs' unjust enrichment claim against Bernard and Alice Clark is also dismissed

---

[4] *See* ECF No. 43 at pg. 5, n.5, Case No. 2:19-bk-57694 and ECF No. 41 at pg. 5, n.5, Case No. 2:19-bk-57693. Under Federal Rule of Evidence 201, this Court takes judicial notice of the Clark Family's bankruptcy proceedings, *In re: Bernard E. Clark and Alice R. Clark,* Case No. 2:19-bk-57694 (Bankr. S.D. Ohio) and *In re: Scott L. Clark,* Case No. 2:19-bk-57693. "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (collecting cases).

[5] Any third-party beneficiary claim would also fail as a matter of law, as the plain language of the contract does not reflect an intention to benefit Scott Clark. *Whatley v. Ohio Nat'l Life Ins. Co*, 851 F. App'x 910, 914 (11th Cir. 2021) (applying Ohio law to a third-party beneficiary claim).

as a matter of law. Under Ohio law, "[t]he existence of an express contract that governs the same subject matter bars an unjust enrichment claim." *Goodwin v. Am. Marine Express, Inc.*, No. 1:18-CV-01014, 2021 U.S. Dist. LEXIS 41649, at *71-72 (N.D. Ohio Mar. 5, 2021); *see also Cook v. Ohio Nat'l Life Ins. Co.,* 961 F.3d 850, 858 (6th Cir. 2020) (collecting cases) ("[A] plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject.")

Though Scott Clark was not part of that express contract, the question remains concerning his liability for Plaintiffs' unjust enrichment claim. "Unjust enrichment occurs when a party retains money or benefits that belong to another." *Budai v. Euclid Spiral Paper Tube Corp.*, No. 96CA0046, 1997 Ohio App. LEXIS 189, at *21–22 (Ct. App. Jan. 22, 1997) (citing *Liberty Mut. Ins. Co. v. Indus. Comm.,* 40 Ohio St. 3d 109, 110–111, 532 N.E.2d 124 (1988)). To prevail on an unjust enrichment claim under Ohio law, Plaintiffs must prove three elements: "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 12 Ohio B. 246, 465 N.E.2d 1298, 1302 (Ohio 1984) (quoting *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (Ohio 1938)).

Plaintiffs claim that "The Clark Family has been knowingly, intentionally, improperly and wrongfully collecting gas drilling royalties from the Lessee of the Property's mineral rights which rightfully belong to Plaintiffs." (Compl. ¶ 50, ECF No. 1 at 10.) The Clark Family argues that according to Plaintiffs' Complaint, the alleged benefit wrongfully retained by them was not conferred on them by Plaintiffs but was instead conferred on them by the oil and gas lessee. The Clark Family therefore insists that Plaintiffs' claim fails for this reason.

Here, the undisputed "evidence must show an unjust loss by the plaintiff and an unjust gain by the defendant; there must be a gain on one side connected by causation to a loss on the other." *Budai,* 1997 Ohio App. LEXIS 189, at *22. After reviewing the record evidence, the Court finds as a matter of law that there is indeed a causal link between the erroneous conveyance of the mineral rights by Plaintiffs to the Clark Family and the royalties issued by the oil and gas lessee to the Clark Family. Scott Clark would not have received royalty payments from the oil and gas lessee but for Plaintiffs' conveyance of the mineral rights to him via the deed they signed. Therefore, the Court grants summary judgment to Plaintiffs as to liability only on their unjust enrichment claim against Scott Clark.

### C. Reformation and Disgorgement

The Court will leave undisturbed the equitable remedies of reformation and disgorgement, as the deed has already been reformed to comply with the terms of the Real Estate Purchase Contract, and the Clark Family has already been disgorged of the royalties held in escrow.

### D. Damages and Attorney's Fees

The Court now turns to Plaintiffs' summary judgment motion.

#### i. Compensatory Damages

Plaintiffs claim that the undisputed evidence from the Gulfport and Rice Drilling/EQT affidavits shows that Gulfport paid the Clark Family $120,502.34, and that Rice Drilling/EQT paid the Clark Family $219,533.77 for a total of $340,036.11 in royalty payments. The Clark Family does not dispute the $120,502.34 paid by Gulfport, because the royalty statements and check stubs attached to the Gulfport representative's affidavit add up to $120,502.34. The Court therefore finds as a matter of law that Plaintiffs are entitled to $120,502.34 in compensatory damages.

9

The Clark Family argues that because EQT erroneously double paid Scott Clark on multiple occasions, Plaintiffs are not entitled to the benefit of EQT's payment error. The Clark Family claims that Scott Clark properly notified EQT of the overpayments during the bankruptcy proceedings, and EQT did not file a creditor claim within the court-imposed deadline. The bankruptcy court's docket supports this assertion. *See In re: Scott L. Clark,* Case No. 2:19-bk-57693.

The undisputed record evidence establishes that EQT paid Scott Clark twice for royalties from the Warrick West wells on six occasions. (ECF No. 114-1 at 1559, 1562, 1564, 1565, 1567, 1569–71.) Gabbianelli's affidavit also supports this conclusion by stating that the Clark Family was paid royalties under owner number 1277807. (Gabbianelli Aff. ¶ 6, *Id.* at 1519.) According to the EQT check stubs and royalty statements attached to Gabbianelli's affidavit, Scott Clark was individually paid under owner number 1287235 on six occasions. Thus, those amounts are not included as part of what was paid to the Clark Family collectively under owner number 1277807. While Plaintiffs argue that this is speculation or supposition, it is what the undisputed record evidence shows. The payments separately made to Scott Clark under owner number 1287235 total $83,776.25. The Court therefore finds as a matter of law that Plaintiffs are not entitled to the $83,776.25 EQT erroneously paid Scott Clark.

The Clark Family also points out that the royalty statements and check stubs attached to the EQT representative's affidavit do not add up to $219,533.77. Though EQT representative Anthony Gabbianelli's affidavit states that the Clark Family was paid a total of $219,533.77 in royalties, the royalty statements and check stubs attached to Gabbianelli's affidavit only add up to $174,304.32. (Gabbianelli Aff. ¶ 3, ECF No. 114-1 at 1518; ECF No. 114-1 at 1520–72.) Thus, there is a discrepancy between Gabbianelli's affidavit, and the amounts stated in the business

10

records attached to it. This discrepancy creates a genuine dispute of material fact concerning the remaining Rice Drilling/EQT royalties amount,[6] and the Court cannot grant summary judgment on this issue.

### ii. Setoff

The parties disagree on whether the Clark Family is entitled to a setoff from Plaintiffs' settlement agreement with Defendant Jonathan Clark. Jonathan Clark prepared the deed that failed to reserve the mineral rights to Plaintiffs. Plaintiffs sued Jonathan Clark for legal malpractice, claiming that he breached his duty of care through his negligence. (Compl. ¶¶ 60–66.) Legal malpractice is a tort claim. *Krahn v. Kinney*, 43 Ohio St. 3d 103, 107, 538 N.E.2d 1058, 1062 (1989). Because of Jonathan Clark's drafting error, the Clark Family converted Plaintiffs' royalty payments as their own. Ohio courts view "conversion [as] an intentional tort." *Joe Hand Promotions, Inc. v. Himmelberg*, No. 3:11-cv-283, 2012 U.S. Dist. LEXIS 48124, at *10 (S.D. Ohio Apr. 5, 2012) (citing *Geiger v. King*, 158 Ohio App. 3d 288, 815 N.E.2d 683 (2004)). Plaintiffs allege that the defendants in this case are jointly and severally liable for their damages. (ECF No. 1 at 14.)

Plaintiffs settled their legal malpractice claim against Jonathan Clark for $250,000. (ECF No. 167 at 2178, 2192.) Plaintiffs now seek $340,036.11 in compensatory damages for their conversion claim against the Clark Family. The Clark Family insists that Plaintiffs are not entitled to a double recovery.

Plaintiffs argue that Ohio Rev. Code § 2307.25 bars any reduction of their conversion claim, because the statute provides a legislative exception to the general rule prohibiting double

---

[6] Subtracting the $83,776.25 EQT erroneously paid Scott Clark from Plaintiffs' claimed $219,533.77 Rice Drilling/EQT amount leaves a potential $135,757.52 in EQT/Rice Drilling royalty payments.

11

recovery. Section 2307.25(A) reads, "There is no right of contribution in favor of any tortfeasor against whom an intentional tort has been alleged and established."

Whereas the Clark Family seeks to reduce Plaintiffs' conversion claim pursuant to Ohio Rev. Code § 2307.28(A). Under § 2307.28(A), "a release reduces the claim against the other tortfeasors by the amount of the consideration paid in exchange for the release." *Spalla v. Fransen,* 188 Ohio App. 3d 666, 676, 936 N.E.2d 559, 566 (2010); s*ee Johnson v. Stachel,* 2020-Ohio-3015, ¶ 38, 154 N.E.3d 577, 591 (Ct. App.) (referring to § 2307.28 as the "setoff statute").

Plaintiffs rely on *Eysoldt v. Proscan Imaging*, 2011-Ohio-6740 (Ct. App.), for the proposition that § 2307.25 governs the instant case. In *Eysoldt,* the defendant-appellant argued that pursuant to § 2307.28, it was entitled to a reduction of the plaintiffs-appellees' claim based on the plaintiffs-appellees' settlement agreements with the other defendants. The defendant-appellant also argued that the plaintiffs-appellees were not entitled to a double recovery under § 2307.28. The *Eysoldt* panel found that § 2307.28 did not apply, and that Ohio precedent instead dictated that under § 2307.25, the defendant-appellant was not entitled to a setoff. The *Eysoldt* panel also determined that under § 2307.25, plaintiffs-appellees could receive a double recovery for the same injury.

The *Eysoldt* panel based its decision on another Ohio Court of Appeals panel's analysis of the Supreme Court of Ohio's decision in *Jones v. VIP Dev. Co.*, 15 Ohio St. 3d 90, 472 N.E.2d 1046 (1984). In *Jones,* the Supreme Court of Ohio examined Ohio's former § 2307.25, then numbered 2307.31, and former § 2307.28, then numbered 2307.32 and reasoned:

> R.C. 2307.31(A) provides that '[t]here is no right of contribution in favor of any tortfeasor who has intentionally caused or intentionally contributed to * * * [an] injury or wrongful death.' Although R.C. 2307.32(F) allows for a reduction of a judgment by the amount paid by another tortfeasor in exchange for a covenant not to sue, we are persuaded that the legislature did not intend that such reduction may benefit an intentional wrongdoer. It would be nonsensical to hold that while

> an intentional tortfeasor may not profit by means of contribution from a fellow
> wrongdoer, he may nevertheless secure a reduction in the judgment against him by
> the sum paid to plaintiff in exchange for a covenant not to sue. We refuse to
> presume that the legislature intended this incongruous result.

*Id.* at 98.

Ten years later, an Ohio Court of Appeals panel took the Supreme Court of Ohio's reasoning a step further by concluding, "Although the court does not state this consequence explicitly, we conclude from the *Jones* decision that the Supreme Court interpreted R.C. 2307.31 as providing a narrow legislative exception to the general rule that among joint tortfeasors the plaintiff is entitled to only one recovery." *Klosterman v. Fussner*, 99 Ohio App. 3d 534, 540, 651 N.E.2d 64, 68 (1994).

The *Eysoldt* panel relied on *Jones* and *Klosterman* to determine that the plain language of § 2307.25 applied, because § 2307.25 provides "a narrow legislative exception to the general rule that among joint tortfeasors, the plaintiff is entitled to only one recovery," and:

> Under that exception, when a plaintiff recovers from or settles with another
> tortfeasor and subsequently obtains a judgment against an intentional tortfeasor for
> the same injury, the plaintiff may recover more than the amount required to make
> the plaintiff whole because the intentional tortfeasor is not entitled to any reduction
> in the award against him, regardless of the amount of the previous judgment or
> settlement.

*Eysoldt*, 2011-Ohio-6740, ¶ 10 (citing *Klosterman*, 99 Ohio App. 3d at 540).

The Court does not reach the same conclusion in the instant case.

Under § 2307.25, "[a] right of contribution is a right that may be exercised between joint and severally liable tortfeasors." *DWS Int'l v. Meixia Arts & Handicrafts, Co.,* No. C-3:09-cv-458, 2013 U.S. Dist. LEXIS 102128, at *6 (S.D. Ohio July 22, 2013).  The issue before the Court is not an instance of one co-defendant seeking to exercise its right of contribution against another co-defendant.  Instead, the Clark Family is seeking to reduce Plaintiffs' conversion claim pursuant

to § 2307.28(A), and the Court finds as a matter of law, that this section of the Ohio Revised Code governs the question of setoff presently before it.

Several years after the *Jones* and *Klosterman* decisions, the Ohio General Assembly revised Chapter 2307 to, *inter alia,* repeal §§ 2307.31 and 2307.32 and enact §§ 2307.25 and 2307.28. 2001 Ohio S.B. 120.

Section 2307.28, which became effective April 9, 2003, now provides:

(A) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of the greater of any amount stipulated by the release or the covenant or the amount of the consideration paid for it, except that the reduction of the claim against the other tortfeasors shall not apply in any case in which the reduction results in the plaintiff recovering less than the total amount of the plaintiff's compensatory damages awarded by the trier of fact and *except that in any case in which the reduction does not apply the plaintiff shall not recover more than the total amount of the plaintiff's compensatory damages awarded by the trier of fact*.
(B)The release or covenant discharges the person to whom it is given from all liability for contribution to any other tortfeasor. (emphasis added).

With the addition of the exception highlighted above, the General Assembly resolved any ambiguity concerning the availability of double recovery. As a result, the Supreme Court of Ohio's discussion of § 2307.32(F) is superseded by statute, and the *Klosterman* panel's identification of the existence of "a narrow legislative exception to the general rule that among joint tortfeasors the plaintiff is entitled to only one recovery" is nullified. *Klosterman*, 99 Ohio App. 3d at 540. Consequently, the *Eysoldt* panel's determination that a plaintiff is entitled to a double recovery defies the plain language of § 2307.28(A).

"[W]hen interpreting statutes, 'the language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear.'" *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001) (quoting *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)). "[W]here the language of a statute is plain and

14

unambiguous and conveys a clear and definite meaning [it] is to be applied, not interpreted." *Sears v. Weimer,* 143 Ohio St. 312, 55 N.E.2d 413, 414 (1944). After considering the record evidence and applying the plain language of § 2307.28(A), the Court finds as a matter of law that Plaintiffs are not entitled to a double recovery.

Plaintiffs previously settled with Jonathan Clark for $250,000 but claim $340,036.11 in compensatory damages at summary judgment. The Court has already determined as a matter of law that Plaintiffs are not entitled to the $83,776.25 EQT erroneously paid Scott Clark. This determination therefore reduces the starting point for Plaintiffs' compensatory damages amount to $256,259.86.

The Court also determined that there remains a genuine dispute of material fact concerning the EQT/Rice Drilling amount, so the total amount of compensatory damages could ultimately be less than $256,259.86. Assuming *arguendo* that Plaintiffs ultimately prove that they are entitled to the entirety of the remaining $256,259.86, § 2307.28(A) dictates that the Clark Family is responsible for the remaining $6,259.86. But if Plaintiffs are awarded a compensatory damages amount that is less than $250,000, then they could not recover more than what they have already received through their voluntary settlement agreement with Jonathan Clark.

### iii. Punitive Damages

Though Plaintiffs also move this Court for punitive damages, they represented during the parties' November 12, 2021 telephone status conference that they are no longer pursuing punitive damages from the Clark Family. The Court therefore denies this portion of their motion for summary judgment as moot.

### iv. Attorney's Fees

15

Plaintiffs also move this Court for attorney's fees on two different bases.  Plaintiffs first claim an entitlement to attorney's fees if awarded punitive damages via their conversion claim. As Plaintiffs are no longer pursuing punitive damages, this portion of their argument is moot.

Alternatively, Plaintiffs submit that they are entitled to attorney's fees for their breach of contract claim, because the Clark Family acted in bad faith by retaining Plaintiffs' property after Faldowski called Bernard Clark to discuss the deed's error.  While Ohio follows the American rule where each party in a breach of contract case "is responsible for their own attorney fees," Ohio also recognizes an exception "when the opposing party acted in bad faith, vexatiously, wantonly, obdurately, for malicious reasons or otherwise engaged in malicious conduct." *Stambaugh v. T.C. Wood Realty, Inc.*, 2010-Ohio-3763, ¶ 36 (Ct. App.)

> In Ohio, there is a common law duty of good faith which is implied in the performance of contracts. *B-Right Trucking Co. v. Interstate Plaza Consulting* (2003), 154 Ohio App. 3d 545, 2003 Ohio 5156, P32, 798 N.E.2d 29. What the duty of good faith consists of depends upon the language of the contract in each case which leads to an evaluation of reasonable expectations of the parties. *Id.* If one acts in accordance with the statutory and contractual rights, then there is no bad faith. *Id.*
>
> *Fultz & Thatcher v. Burrows Grp. Corp.*, 2006-Ohio-7041, ¶ 34 (Ct. App.)

The Clark Family argues that they did not act in bad faith, and moreover, Plaintiffs are not entitled to summary judgment on this issue, as motive or intent is inappropriate at the summary judgment stage.  The Court agrees.  Plaintiffs' request for attorney's fees is denied as premature.

### E.  Prejudgment Interest

Plaintiffs also move this Court for an award of prejudgment interest pursuant to Ohio Rev. Code §§ 1343.03(C)(1) and 1343.03(A) and under Ohio common law.

### i.    Ohio Rev. Code § 1343.03(C)(1)

Plaintiffs claim they are entitled to prejudgment interest as a result of Defendants' failure to make a good faith effort to settle pursuant to Ohio Rev. Code § 1343.03(C)(1), which states in pertinent part:

C)

(1) If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed as follows:

. . .

(b) In an action in which the party required to pay the money engaged in the conduct resulting in liability with the deliberate purpose of causing harm to the party to whom the money is to be paid, from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered;

The Clark Family insists that Plaintiffs' request for prejudgment interest is severely premature. The Court agrees. Plaintiffs' motion was filed prior to any money judgment in this case. *Moskovitz v. Mt. Sinai Med. Ctr.,* 69 Ohio St. 3d 638, 658, 635 N.E.2d 331, 347 (1994) (stating "[t]he motion must be filed after judgment"); *Cotterman v. Cleveland Elec. Illuminating Co.*, 34 Ohio St. 3d 48, 50, 517 N.E.2d 536, 538 (1987) (explaining that "[t]he language of the statute contemplates a post-trial motion").

Moreover, "[t]he trial court [] does not have discretion to rule on a motion for prejudgment interest based solely on the motion and briefs . . . because the plain terms of the statute require that a hearing be held." *Pruszynski v. Reeves*, 117 Ohio St.3d 92, 96, 881 N.E.2d 1230, 1234 (2008). As the Court has yet to render a money judgment or hold a hearing to determine whether the Clark Family made a good faith effort to settle this matter, Plaintiffs' request for prejudgment interest under Ohio Rev. Code § 1343.03(C)(1) is denied as premature.

**ii.    Common Law**

Plaintiffs also move this Court for an award of prejudgment interest under Ohio common law.  "An award of prejudgment interest on a conversion claim is within the trial court's discretion as part of the compensatory award."  *Masterson v. Weaver*, 2006-Ohio-1069, ¶ 52 (Ct. App.)  It does not constitute a special proceeding like moving for prejudgment interest pursuant to Ohio Rev. Code § 1343.03(C).  *Moskovitz*, 635 N.E.2d at 347.

Plaintiffs argue that the compensatory nature of prejudgment interest "is designed to make the injured party whole." (ECF No. 165-1 at 2083.)  But once again, Plaintiffs' request is premature, as the Court is not in a position to render judgment as a matter of law on the issue of compensatory damages.  The Court therefore declines to exercise its discretion to award common law prejudgment interest, and this portion of Plaintiffs' motion is denied.

### iii.    Ohio Rev. Code § 1343.03(A)

Plaintiffs also claim an entitlement to prejudgment interest under Ohio Rev. Code § 1343.03(A), money due for any instrument of writing, which reads in pertinent part:

> (A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest . . . .

Plaintiffs argue that the oil and gas lease royalty payments were due and payable to the owners of the mineral rights pursuant to the Real Estate Purchase Contract—an instrument of writing.

The Clark Family argues that the only money that became due and payable under the Real Estate Purchase Contract was the initial deposit and the remainder of the purchase price.  The Clark Family further explains that the money judgment Plaintiffs seek in this action does not relate to

the Clark Family's failure to pay either of those amounts. Instead, it is due to the failure to reserve the mineral rights in the deed. Therefore, any money due was not due pursuant to the Real Estate Purchase Contract and will only become due and payable upon the rendering of a final money judgment in this case.

The Court agrees and finds as a matter of law that Plaintiffs are not entitled to prejudgment interest under Ohio Rev. Code § 1343.03(A).

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion (ECF No. 109) remains **GRANTED IN PART AND DENIED IN PART**. The Court reaffirms its earlier grant of summary judgment to Plaintiffs as to liability only on their conversion claim against the Clark Family, their breach of contract claim against Bernard and Alice Clark as to liability only, but now denies summary judgment on their breach of contract claim against Scott Clark and instead grants summary judgment as to liability only on their unjust enrichment claim against Scott Clark.

The Clark Family's motion (ECF No. 112) is also **GRANTED IN PART AND DENIED IN PART**. The Court now grants summary judgment to Scott Clark on Plaintiffs' breach of contract claim, and consequently, Plaintiffs' breach of contract claim against him is dismissed. The Clark Family's motion is denied as to Plaintiffs' conversion claim against them, Plaintiffs' breach of contract claim against Bernard and Alice Clark, and Plaintiffs' unjust enrichment claim against Scott Clark.

The remaining claims in this case are Plaintiffs' conversion claim against the Clark Family, their breach of contract claim against Bernard and Alice Clark, and their unjust enrichment claim against Scott Clark.

19

For the reasons stated above, Plaintiffs' Motion for Summary Judgment as to Compensatory and Punitive Damages Against the Clark Family Together with Attorney Fees (ECF No. 166) is **GRANTED IN PART AND DENIED IN PART**.

For the reasons stated above, Plaintiffs' Motion for Pre-Judgment Interest (ECF No. 165) is **DENIED**.

The remaining issues are Plaintiffs' total compensatory damages, attorney's fees, and prejudgment interest.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: January 31, 2022